FILED

2022 Jan-18  AM 09:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JIMMY NOLEN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-1198-CLM** |
| | ) | |
| **KILOLO KIJIKAZI,** | ) | |
| **Acting Commissioner** | ) | |
| **of the Social Security** | ) | |
| **Administration,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Jimmy Nolen seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Nolen's application in an opinion written by an Administrative Law Judge ("ALJ"). Nolen argues: (1) that the ALJ unfairly evaluated the opinion of Dr. June Nichols, an examining consultative psychologist, and (2) that substantial evidence does not support the ALJ's decision.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.      **Statement of the Case**

A.      **Nolen's Disability, as told to the ALJ**

Nolen was 44 years old at the time of the ALJ's decision. R. 59, 228. Nolen has a ninth-grade education and no past relevant work experience. R. 58, 72. Starting in middle school, Nolen was in special education classes. R. 78–79. At the time of the ALJ hearing, Nolen was an inmate at the Cherokee County jail. R 67.

In his disability report, Nolen alleged that he suffered from bipolar disorder, manic depression, psych effective, and anxiety. R. 281. At the ALJ hearing, Nolen testified that when he's home he "stay[s] nervous all the time" and has panic attacks. R. 74–75. Nolen also said he'd have trouble making it to work every day because of his feelings of panic. R. 78. But Nolen says when he's on his medications his panic attacks aren't as bad. R. 75. And Nolen, who used to use methamphetamines, was able to go to the street to look for drugs. R. 77.

Nolen spends a lot of time alone in his room because it helps him cope with his panic attacks. R. 80. And Nolen says he has trouble sleeping and struggles with mental health issues even when he is off drugs. R. 79–80.

B.      **Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. § 416.920(e-f) (Step 4); 20 C.F.R. § 416.920(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Nolen's residual functional capacity is the most important step here, as all of Nolen's challenges flow from the ALJ's decision at this point.

### C.    Nolen's Application and the ALJ's Decision

The SSA reviews applications for SSI in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 416.1400(a)(1-4).

Nolen applied for SSI in July 2017, claiming that he was unable to work because of various ailments, including bipolar disorder, anxiety, and depression. After receiving an initial denial in October 2017, Nolen requested a hearing, which the ALJ conducted in July 2019. The ALJ issued an opinion denying Nolen's claims a few weeks later. R. 47–59.

At Step 1, the ALJ determined that Nolen was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Nolen suffered from the following severe impairments: depressive/bipolar disorder, anxiety/obsessive disorder, intellectual disorder, and polysubstance abuse disorder.

At Step 3, the ALJ found that none of Nolen's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 32–34. So the ALJ next had to determine Nolen's residual functional capacity.

The ALJ determined that Nolen had the residual functional capacity to perform a full range of work at all exertional levels with these non-exertional limitations:

- Nolen can perform a full range of unskilled work, which is simple, repetitive, and routine.

- Nolen's supervision must be simple, direct, and uncritical.

- Nolen may need intermittent reminders and supervision (1-2 extra times per day).

- Nolen's interpersonal contact with supervisors and co-workers must be incidental to the work performed.

- Nolen will do best in a well-spaced work setting, with his own work area, or where he can frequently work alone.

- Nolen must not be required to work at fast-paced production line speeds.

- Nolen should have only occasional, gradually introduced workplace changes.

- Nolen must have normal, regular work breaks at least every two hours.

- Nolen can set ordinary daily work goals but may need assistance with long-term or complex planning.

- Nolen shouldn't be required to travel to unfamiliar place or to use public transportation as part of his work duties.

- Nolen should have only occasional, casual contact with the general public.

At Step 4, the ALJ found that Nolen had no past relevant work. At Step 5, the ALJ determined that Nolen could perform jobs, such as floor waxer and cleaner II, that exist in significant numbers in the national economy and thus Nolen was not disabled under the Social Security Act.

Nolen requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    Legal Analysis

Nolen makes two arguments for why the ALJ erred in finding him not disabled. First, Nolen argues that the ALJ improperly rejected the opinion of Dr. Nichols, a consultative examiner, when assessing his residual functional capacity. Second, Nolen asserts that the ALJ's decision is not supported by substantial evidence. The court will address each argument in turn.

### A.    Dr. Nichols' Opinion Evidence

Nolen first argues that the ALJ improperly discounted the opinion of Dr. June Nichols who performed a psychological consultative examination on Nolen in October 2017. R. 369–72. Dr. Nichols diagnosed Nolen with social phobia; panic disorder; agoraphobia; major depressive disorder, recurrent, severe; opioid use disorder, currently in remission; and borderline intelligence. R. 371. Dr. Nichols then said that Nolen's prognosis for significant improvement was poor "as symptoms have been present since childhood without resolution." *Id.*

Dr. Nichols found that Nolen could understand, remember, and carry out instructions. R. 372. But she determined that Nolen cannot sustain concentration and persist in a work related activity at a reasonable pace. R. 372. Dr. Nichols also stated that Nolen likely cannot "maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public." *Id.* Dr. Nichols then

found that Nolen cannot deal with normal pressures in a competitive work setting. *Id.* She finally determined that Nolen could manage his own funds. *Id.*

The ALJ gave Dr. Nichols' opinion no weight. R. 57–58. According to the ALJ, he had "reviewed hundreds of consultative mental examination findings by Dr. Nichols, and she has included this type of opinion in almost all of them, regardless of the actual findings that she makes." R. 58. The ALJ then stated that Dr. Nichols' opinions contradicted her own examination findings and evidence that Nolen's condition improved when he stopped using recreational drugs. *Id.* The ALJ then noted that the evidence showed that Nolen's medication helped him and that Nolen's testimony about how he obtained drugs contradicted other evidence that his panic attacks prevented him from leaving his house. *Id.*

Nolen raises four arguments related to the ALJ's handing of Dr. Nichols' medical opinion.

1. <u>'Some measure of clarity' lacking</u>: Nolen first argues that the ALJ failed to provide "some measure of clarity" for why he gave Dr. Nichols' opinion no weight. In support of this argument, Nolen cites the rule that an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). That was the old rule. Under the new regulations, which apply to claims filed on or after March 27, 2017, the ALJ still must articulate how persuasive he finds each

8

medical source's opinion. *See* 20 CFR § 416.920c(b). But the ALJ doesn't need to assign the medical opinions a specific evidentiary weight. 20 CFR § 416.920c(a). Instead, when evaluating a medical source's opinion, the ALJ just needs to explain how he considered the factors of supportability and consistency. 20 CFR § 416.920c(b)(2).

The ALJ complied with the new regulations by explaining that Dr. Nichols' examination findings didn't support her opinion and that the opinion contradicted "the medical evidence of significant improvement when the claimant stopped using recreational drugs." R. 58.[1] And the ALJ also assigned Dr. Nichols' opinion an evidentiary weight (*i.e.*, no weight). So this argument fails.

2. <u>Improperly impeached own witness</u>: Nolen also asserts that the ALJ erred because the Commissioner cannot impeach Dr. Nichols by speculation and accusations that she routinely submitted false evaluations. In support of this argument, Nolen cites two cases, *Cone v. Ragan*, 261 So. 2d 28 (Ala. 1972) and *Holloway v. Robertson*, 500 So. 2d 1056, 1061 (Ala. 1986).

The cases Nolen cites address evidentiary rulings by Alabama trial courts during a jury trial. *See Holloway*, 500 So. 2d at 1061; *Cone*, 261 So. 2d at 29–30. They don't govern the ALJ's obligations towards a consultative examiner. In social

---

[1] Though the ALJ followed the old rubric of assigning an evidentiary weight to Dr. Nichols' opinion, it's apparent from the ALJ's assessment that he found her opinion unpersuasive because it wasn't supported by her examination findings and conflicted with other evidence in the record.

security proceedings, an ALJ is free to find a medical source's opinions unpersuasive as long as the ALJ considers the factors of supportability and consistency and substantial evidence supports his determination. *See* 20 CFR § 416.920c.

Under these factors, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 CFR § 416.920c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 CFR § 415.920c(c)(2).

Though the ALJ stated that he had "reviewed hundreds of consultative mental examination findings by Dr. Nichols, and she has included this type of opinion in almost all of them, regardless of the actual findings that she makes," it doesn't look like he rejected Dr. Nichols' opinion for this reason. Instead, the ALJ explained that he gave Dr. Nichols' "opinion no weight because it is inconsistent with her own examination findings and with medical evidence of significant improvement when the claimant stopped using recreational drugs." R. 58. And even if the ALJ erred in mentioning Dr. Nichols' mental examination findings in other cases, the court finds that error harmless because the ALJ gave other valid reasons for discounting Dr. Nichols' opinion. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). As

explained below, substantial evidence supports the ALJ's decision to reject Dr. Nichols' opinion.

To start, the ALJ reasonably concluded that Dr. Nichols' examination findings didn't support her opinion. Dr. Nichols stated that Nolen couldn't sustain concentration or maintain effective social interaction at work. R. 372. But during the mental status exam, Dr. Nichols observed that Nolen had clear speech. R. 370. And though Nolen's mood was dysthymic, it was congruent with his thought processes. *Id.* Nolen's stream of consciousness was also clear, and his speed of mental processing was adequate. *Id.* For example, Nolen could count down from 20 to 1 in nine seconds, and he could spell 'world' backwards. *Id.* Though Nolen couldn't perform serial threes or sevens, he could add, subtract, and perform more complex arithmetic involving multiplication. *Id.* Dr. Nichols found Nolen's memory grossly intact, and his thought processes were within normal limits. R. 370–71. For example, there was no evidence of confusion, loose associations, tangentiality, flight of ideas, or thought blocking. R. 371. Finally, Nolen had good judgment and insight. *Id.* Substantial evidence supports the ALJ's determination that these mental status exam findings contradict the extreme limitations that Dr. Nichols recommended at the end of her psychological evaluation.

Substantial evidence also supports the ALJ's finding that Dr. Nichols' opinion contradicts much of the other record evidence. As the ALJ noted, Nolen's medical

records suggest that his condition improves when he's not using recreational drugs.

R. 403–404. And the ALJ correctly pointed out that Nolen's medications help

manage his panic attacks. R. 75, 78, 385–88. Finally, as the ALJ explained, Nolen's

testimony that he could go buy drugs off the street suggests that his panic attacks

weren't as debilitating as both Nolen and Dr. Nichols said they were. R. 77. So the

ALJ reasonably concluded that the other evidence in the record contradicted Dr.

Nichols' opinion.

In short, the ALJ gave valid reasons for rejecting Dr. Nichols' opinion that

weren't based on speculation or allegations that Dr. Nichols submitted false reports.

3. 'Degree of suspicion' standard should apply: Citing *Wilder v. Chater*, 64

F.3d 335, 337 (7th Cir. 1995), Nolen next asks the court to apply 'a degree of

suspicion' to the ALJ's decision to assign no weight to Dr. Nichols' opinion.

The court declines to apply the 'degree of suspicion' standard to the ALJ's

assessment of Dr. Nichols' medical opinion for two reasons. First, the Eleventh

Circuit has not adopted the 'degree of suspicion' standard. *See Jackson v. Soc. Sec.

Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019). Second, even if *Wilder*

controlled, *Wilder* is distinguishable from the facts here. In *Wilder*, the consultative

examiner's opinion was the only medical evidence that addressed the onset date of

the claimant's depression. *See Wilder*, 64 F.3d at 337. But here the record includes

multiple medical records that address Nolen's mental impairments. So—even if the Eleventh Circuit adopted *Wilder*'s analysis—*Wilder* does not apply to these facts.

4. <u>No good cause</u>: Nolen's final argument is that the ALJ erred in refusing to accept Dr. Nichols' opinion without good cause. Nolen offers only this single conclusory statement to support this argument. And this argument fails because even if the old regulations applied, the ALJ wouldn't need good cause to reject the opinion of a one-time consultative examiner. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

* * *

In short, none of Nolen's arguments persuades the court that the ALJ erred in evaluating Dr. Nichols' opinion evidence.

**B.     Substantial Evidence**

Nolen next asserts that substantial evidence didn't support the ALJ's decision to deny benefits because the ALJ's hypothetical question to the vocational expert was deficient. "[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180. But if substantial evidence supports the ALJ's finding that the claimant doesn't have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

Nolen argues that the ALJ's hypothetical question was deficient because when asked a hypothetical question that included the limitations that Dr. Nichols recommended, the vocational expert testified that there were no jobs a hypothetical person with those limitations could perform. As explained above, the ALJ properly discounted Dr. Nichols' opinion. And Nolen hasn't pointed to other evidence that would support including these limitations in the hypothetical question. So the ALJ didn't have to rely on a hypothetical question that included the limitations that Dr. Nichols provided.

## IV.   Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on January 18, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE